UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SUE MEADE,

    Plaintiff,

v.                                            Case No. 1:23-cv-400
                                                Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB).

On January 26, 2016, plaintiff filed a application for DIB alleging a disability onset date of January 1, 2014.  PageID.45, 183.  Administrative Law Judge (ALJ) Rosenberg issued an unfavorable decision on May 31, 2018.  PageID.45.  The Appeals Council vacated the decision and remanded for further proceedings before ALJ Ambrose.  Plaintiff identified her disabling conditions as fibromyalgia and depression.  PageID.465.  Prior to applying for benefits, plaintiff completed the 12th grade and cosmetology school, and had past relevant work as a hand packager and an institutional cleaner.  PageID.58, 466.  ALJ Ambrose reviewed plaintiff's application de novo and entered a written decision denying benefits on May 2, 2022.  PageID.45-60.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful employment since the alleged onset date of January 1, 2014, and last met the insured requirements of the Social Security Act on March 31, 2016. PageID.47-48. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: degenerative disc disease of the cervical and lumbar spine; fibromyalgia; rotator cuff tendinitis of the bilateral shoulders; migraine headaches; obesity; left ventricular diastolic dysfunction; bipolar depression; anxiety disorder; and personality disorder. PageID.48. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.48.

The ALJ decided at the fourth step that,

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she needs a sit/stand option at will provided she is not off task more than 10% of the work period. There will be no ladders ropes or scaffolds. She can occasionally [sic] ramps and stairs and occasionally balance, stoop, kneel, crouch and crawl. She is limited to occasional overhead reaching bilaterally and frequent handling and fingering of objects bilaterally. She must avoid concentrated exposure to extreme cold, heat, humidity, environmental irritants and poorly ventilated areas. She must avoid all use of moving machinery and exposure to unprotected heights. She is able to perform simple, routine and repetitive tasks with only occasional interaction with the public and coworkers.

PageID.50. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.58.

At the fifth step, the ALJ found that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.59. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the

4

national economy such as a routing clerk (2,300 jobs), a mail sorter (13,000 jobs), and an inspector / hand packager (29,000 jobs). PageID.59. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from January 1, 2014 (the alleged onset date) through March 31, 2016 (the date last insured). PageID.60.

### III. DISCUSSION

Plaintiff raises two errors on appeal.

**A. With three severe mental impairments, did the ALJ's residual functional capacity (RFC) finding sufficiently consider the effects of the mental limitations when his only mental limitation was restricting plaintiff to perform simple, routine and repetitive tasks with only occasional interaction with the public and coworkers?**

As discussed, ALJ Ambrose found that plaintiff had three severe mental impairments of bipolar depression, anxiety disorder, and personality disorder. Plaintiff contends that "[she] is far more limited in her attendance and ability to function in the workplace than is shown by the decision's minimal evaluation of the effects of three severe mental impairments." Plaintiff's Brief (ECF No. 9, PageID.1463). Plaintiff bases her claim on the ALJ's Step 3 determination of whether she met the requirements of a listed impairment, in this case Listing 12.04 (Depressive, bipolar and related disorders), Listing 12.06 (Anxiety and obsessive-compulsive disorder), and Listing 12.08 (personality and impulse-control disorder). In determining whether plaintiff met the "paragraph B" criteria of these listings, the ALJ found that she had moderate limitations in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adapting or managing oneself. PageID.49. However, the ALJ pointed out that these findings are not an RFC assessment,

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental

5

> residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

PageID.49-50.  See *Smagala v. Commissioner of Social Security*, No. 1:22-cv-1152, 2024 WL 1068317 at *5 (W.D. Mich. March 12, 2024) ("[I]t is well established that the Paragraph B criteria used in determining whether a claimant meets or equals a listed impairment are not an RFC assessment.") (internal quotation marks omitted).

At step 4, the ALJ's evaluated plaintiff's RFC during the relevant time period (January 1, 2014 through March 31, 2016).  *See* PageID.48. The ALJ noted that in April 2015,

> [T]he claimant received inpatient hospital treatment for behavior that was bizarre, psychotic and manic. She appeared rambling, hyperverbal, and exhibiting disorganized thought processes. . . . At discharge, her diagnosis included bipolar disorder, most recent episode manic, mild to moderate in severity. A plan for care was conservative and included outpatient therapy and medication management (Ex. 3F/1-3; 13F).

PageID.52.  At the time of plaintiff's discharge from the hospital on April 8, 2015, Aurif Abedi, M.D. found that "[w]ith medications, therapy and abstinence from any drugs or alcohol, [plaintiff's] prognosis is good."  PageID.800.

The ALJ noted that in July 2015 plaintiff's psychotherapy records showed her mental health symptoms ranged from "mild to moderately severe" with "no bizarre or odd behavior noted."  PageID.52.  Plaintiff's condition improved over time.

> While claimant had inpatient psychiatric care in April 2015, she has had good response with medications and no dedicated mental health treatment. As late as November 2015, her provider reported she was only "slightly anxious," and despite having a problem list that included depression, anxiety and personality related issues, she remained cooperative, well groomed, fully oriented and had normal insight. In early 2016, she maintained an alert and fully oriented appearance (Ex. 3F; 6F; 8F; 13F).

PageID.57.

6

The ALJ also cited the opinion of DDS psychiatric consultant Ashok Kaul, M.D., who examined the record in August 2015 and provided the following mental RFC:

> Claimant is able to understand, remember and carryout simple instructions on a regular, routine and fairly sustained basis.  She can tolerate low stress social demands, adjust to simple changes in routine, work independently and without need for any special supervision. She remains capable of 1-2-3 step unskilled work.

PageID.162.  The medical record supports Dr. Kaul's opinion.  In summary, substantial evidence supports the ALJ's conclusion that plaintiff has the RFC "to perform simple, routine and repetitive tasks with only occasional interaction with the public and coworkers." PageID.50.  Accordingly, plaintiff's claim of error is denied.

### B. With severe impairments of fibromyalgia, migraine headaches and degenerative disc disease of the cervical and lumbar spine, is the ALJ's RFC finding of limited light work supported by substantial evidence?

The ALJ recognized that while plaintiff had severe impairments during the relevant time period, she retained the ability to perform a limited range of light work:

> In sum, while the medical evidence of record does indicate that the claimant has severe physical and mental impairments that result in periodic limitation, it does not convincingly demonstrate that her limitations were totally work preclusive, at least from the alleged onset date of January 1, 2014 through her date last insured of March 31, 2016.  The records through this period establish the claimant had severe physical impairments including degenerative disc disease, fibromyalgia, rotator cuff tendinitis, migraine headaches, obesity, and left ventricular diastolic dysfunction. Yet during this period her treatment has been relatively conservative in nature with prescribed treatment, she has not had any surgical intervention, and she has not required an assistive device to ambulate.  While she has degenerative disc disease of the lumber and cervical spine with, at times, muscle spasms and positive straight leg raise test, she often had normal upper extremity range of motion, normal gait, and was reportedly responding well to treatment. In late 2015 she had "mild" lumbar spine degenerative changes and by early 2016, she had only mild neck tenderness, no extremity edema, and she did not require the use of an assistive device (Ex. 1F; 2F; 4F; 5F; 6F; 8F). Regarding her fibromyalgia and rotator cuff tendinitis, she had popping and grinding shoulders in August 2014, but no significant abnormality on imaging results. There was fibromyalgia with rheumatology treatment 2014 and 2015 with tender points of pain and positive straight leg raise, but full range of motion at the upper and lower extremities

(including shoulders and hands). Thereafter, she was reportedly "responding well" to Cymbalta for chronic pain. In February 2016, her weight was 293 pounds, which might have exacerbated her pain symptoms, and on March 11, 2016, the claimant's lab work from her rheumatologist showed within normal range rheumatoid factor (less than 14 range) (Ex. 2F; 4F; 6F; 8F; 9F). While she has migraines with neck and right ear pain at times, through early 2016, she often appeared alert and oriented when examined. In early 2016, she did not complain of headaches and not until August 2016 did the claimant receive neurological treatment for ocular migraines, which high blood pressure with morbid obesity (299 pounds, 132/84) might have exacerbated, but was notably after her date last insured (Ex. 8F; 11F; 13F). The claimant has left ventricular diastolic dysfunction but an ejection fraction of 60-65% in August 2014. Physical exam findings during the relevant period routinely showed regular heart sounds and clear breath sounds. She often had no problems ambulating and she has not been hospitalized for cardiac related issues (Ex. 1F; 2F; 6F; 11F). I find that the claimant's physical conditions warrant the limitations to a reduced light exertion range with a sit/stand option (while not off task greater than 10% of the work period) and limitations with climbing, postural activities, handling/fingering and overhead reaching bilaterally, environmental limitations, and exposure to hazards to avoid aggravation of pain, weakness and work place injury

PageID.56. [1]

During the relevant time period, the ALJ noted that plaintiff's treatment with a rheumatologist in September 2014 indicated that while she exhibited classic fibromyalgia tender points of pain, her physical examination showed no use of a cane, wheelchair, or crutches, no extremity edema, and "full range of motion of the shoulders, elbow, wrists, hands (good grip strength), hips, and ankles." PageID.51, 656-658. She was treated conservatively and reported as responding well to Cymbalta in February 2015. PageID.51, 705. In June 2015, the rheumatologist

---

[1] The Court notes that plaintiff had additional medical conditions after her date last insured (March 31, 2016). For example, in August 2016 plaintiff experienced left foot weakness and numbness, and, underwent orthopedic treatment for left shoulder pain and limited range of motion; plaintiff underwent physical therapy for lower back pain complaints and right-sided sciatica in late 2017; plaintiff had bariatric surgery in 2019; plaintiff had a bunionectomy in November 2020; plaintiff had complaints of lower back and neck pain in May 2021; plaintiff had treatment for migraines in September 2021; and, plaintiff had treatment for chronic neck pain and right shoulder/arm pain in 2022. PageID.53-56. However, these later developments do not affect the Court's decision. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Social Security Administration*, 88 Fed. Appx. 841, 845 (6th Cir. 2004). *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) (evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status).

noted that although plaintiff had improvement with Cymbalta, she stopped taking it suddenly (despite being told not to do that). PageID.698. Plaintiff went to physical therapy but stopped going. *Id*. Plaintiff was prescribed Mobic for pain and Neurontin, which she reported provided slight benefits. PageID.698, 701.

The ALJ gave partial weight to the opinion of DDS medical consultant Reuben Henderson, D.O., who found that in August 2015, plaintiff was limited to light work with some postural and environmental limitations based on the record which existed at that time. *See* PageID.57, 157-160. However, the ALJ found additional medical evidence developed at the hearing level which the doctor was not privy to at the time of that evaluation. This evidence resulted in the ALJ assigning additional limitations of "a sit/stand option, a limitation to no more than occasional postural maneuvers, other environmental limitations, and the need for manipulative and overhead reaching limitations." PageID.57.

Based on this record, the ALJ's determination that plaintiff was limited to light work with additional limitations is supported by substantial evidence. Accordingly, this claim of error is denied.

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 16, 2024        /s/ Ray Kent
                                 RAY KENT
                                 United States Magistrate Judge

9